UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SADEQ ALI QURAISHI<br><br>Defendant | CRIMINAL No. 22-10306-AK |

GOVERNMENT'S SENTENCING MEMORANDUM

On October 10, 2024, a jury convicted defendant Sadeq Ali Quraishi of the sole count of the indictment, Attempted Sex Trafficking of a Child, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and 1594(a). In reaching that verdict, the jury concluded that the defendant, then a licensed anesthesiologist, traveled to a Greater Boston hotel, intending to pay for sex with a 14-year-old girl. Accordingly, the government respectfully requests that the Court sentence defendant Sadeq Ali Quraishi to serve 151 months in prison, to be followed by 5 years of supervised release, and to pay mandatory special assessments of $5,100.

**Background**

A. The Undercover Operation.

On November 2, 2022, Homeland Security Investigations ("HSI") agents and other law enforcement officers conducted an undercover operation designed to identify and apprehend people who sought to pay for sex with children. PSR ¶ 8. To that end, agents placed advertisements on commercial sex advertising websites. *Id.* Putative defendants responded to the ads by contacting agents at the numbers listed in the online ads. *Id.* The agents disclosed that they were selling sex with 12- and 14-year-old girls. *Id.* The agents and the putative defendants

negotiated a fee for the specific sex acts the putative defendants requested. *Id.* The agents disclosed that the children were available at a hotel in Waltham. *Id.* The putative defendants arrived at the hotel. *Id.* After they met with the agent and confirm that they had the money to pay for the requested sex act, they were arrested by federal agents. *Id.*

        B.      <u>Quraishi Agreed to Pay $250 to Have Unprotected Anal Sex with a 14-Year-Old</u>.

Quraishi sent a text to the undercover agents to inquire about the commercial sex ad they had posted on Skipthegames.eu. PSR ¶ 12. After a brief exchange about the direction Quraishi was traveling, an agent disclosed that she was offering sex with 12- and 14-year-old girls, stating, "well think about it. I got 14 yo Bri and 12 yo Jes. Def unique and so much fucking fun." PSR ¶ 12.

In response to the undercover agent's disclosure about the ages of the children, Quraishi asked whether the agent was a cop. PSR ¶ 13. After a brief discussion about whether this was a law enforcement operation, Quraishi asked the undercover agent if he could pay to have anal sex with one of the children, stating, "Cool I appreciate that . . . backdoor is ok too?" PSR ¶ 13. The agent disclosed that anal sex would cost an extra $50 and that only the 14-year-old girl, "Bri," was able to engage in anal sex. PSR ¶ 13. Ultimately, Quraishi and the undercover agent discussed, and Quraishi agreed to pay, $250 for unprotected anal sex with 14-year-old Bri. PSR ¶¶ 13–15.

Before departing for Waltham, where he believed he would find the young victim, Quraishi paused momentarily. PSR ¶ 16. He reflected on the victim's age, telling the undercover agent that "it would be a different thing" if she were slightly older, meaning 16 instead of 14 years old. PSR ¶ 16. Quraishi also cited the guilt he would feel after this illicit sexual encounter. PSR ¶ 18. At trial, the jury saw Quraishi's cell phone search history, which indicated that during this brief period of hesitation, Quraishi was searching the internet for the undercover agent's telephone

2

number and a word that resembles "police," indicating that he was stalling to assure himself that the person offering sex with a child was not a police officer. PSR ¶ 20.

After convincing himself that he would not be caught in a police sting, Quraishi reconfirmed that he was on his way to the hotel in Waltham. PSR ¶ 19. When he arrived, he met HSI Special Agent Kristen Draper in the hotel's parking lot. PSR ¶ 22. She was posing as the person selling sex with the children. *Id.* There, Quraishi confirmed that he had the money to pay for the sex act, acknowledged that he should not go through the front door of the hotel because hotel staff would be on the look-out for suspicious behavior, and, unprompted, asked Special Agent Draper what he should do with the room key when he finishes his half-hour session with the 14-year-old. PSR ¶¶ 22–24. A few seconds later, agents arrested Quraishi. PSR ¶ 24.

When Quraishi was arrested, he was in possession of a cell phone. PSR ¶ 25. Pursuant to a federal warrant authorizing agents to seize evidence from the 30-day period before his arrest, agents searched that phone and found extensive evidence of Quraishi's knowledge of, and participation in, the commercial sex trade. PSR ¶ 25. Namely, the cell phone's web browsing history indicates Quraishi had viewed hundreds of commercial sex advertisements. PSR ¶ 25. The texts on the phone indicate that he communicated with commercial sex providers to arrange encounters, often including the specific sex act he sought to perform on the 14-year-old, anal sex. PSR ¶ 25.

C. Quraishi Provided False Testimony.

At trial, Quraishi testified about his conduct on November 2, 2022. His testimony included an elaborate, albeit false, description of his plan to rescue the fictitious victims in this case. *See* ECF No. 120 at 31–60; *see also* PSR ¶ 27. The testimony was designed to persuade the jury that he did not intend to commit the charged offense. *See, e.g.*, ECF No. 120 at 49 ("So I decided at

that point, yeah, I'm going to brave up. I'm going to do something right. I'm finally going to step up and do something right.") and 50 ("I just thought I could go there and save these girls."). However, the jury rejected Quraishi's testimony about his intent, concluding instead that he intended to pay for se with the fictitious victim.

## The Sentencing Guidelines

The government concurs with Probation's sentencing guidelines calculation. PSR ¶¶ 32–34. The base offense level is 30, pursuant to U.S.S.G. § 2G1.3. PSR ¶ 32. And the Court should apply two adjustments: use of a computer, pursuant to §2G1.3(b)(3); and obstruction of justice, pursuant to § 3C1.1. PSR ¶¶ 33 and 36. Therefore, with a total offense level of 34, and criminal history category I, the applicable sentencing guideline range is 151 to 188 months in prison.

A.   The Court Should Apply the Two-Level Adjustment for Use of a Computer.

The Court should apply the two-level specific offense characteristic for the defendant's use of a computer or an interactive computer service, pursuant to U.S.S.G. § 2G1.3(b)(3)(A) or (B), because the defendant "use[d] a computer or an interactive computer service to (A) persuade, induce, [or] entice . . . the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor."

The Sentencing Guidelines' definition of a "minor" includes "an individual, whether fictitious or not, who a law enforcement officer represents to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct." U.S.S.G. §2G1.3, cmt. n.1.

Here, the defendant used his cell phone to respond to an online commercial sex advertisement. PSR ¶ 33. Then, he communicated with an undercover agent both to: (A) persuade, induce or entice the fictitious minor to engage in prohibited sexual conduct; and to entice,

4

encourage, and solicit the undercover agents to engage in prohibited sexual conduct with a minor by selling sex with the minor victim, i.e., Sex Trafficking of a Child, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2). *See* U.S.S.G. § 2G1.3, cmt. n.1 (cross-referencing §2A3.1 and defining "prohibited sexual conduct" as "any sexual activity for which a person can be charged with a criminal offense."). Because the facts of this case satisfy both prongs of §2G1.3(b)(3), the Court should apply the two-level adjustment.[1]

      B.      <u>The Court Should Apply the Two-Level Adjustment for Obstruction of Justice.</u>

Probation's calculation properly includes a two-level adjustment because the defendant willfully obstructed justice by committing perjury at trial, pursuant to U.S.S.G. § 3C1.1. PSR ¶ 36. The Sentencing Guidelines prohibit the application of the two-level adjustment merely based on a defendant's denial of guilt. *See* U.S.S.G. § 3C1.1, cmt. n.2. However, Application Note 2 specifically exclude from that general prohibition the defendant's "denial of guilt under oath that constitutes perjury." *See* U.S.S.G. § 3C1.1, cmt. n.2 and 4(B).[2]

"The Supreme Court has adopted the federal definition of criminal perjury to serve as the meaning of perjury in this context, defining it as '[giving] false testimony [under oath] concerning a material matter with the willful intent to provide false testimony, rather than as a result of

---

[1] The Court should overrule the defendant's objection to application of §2G1.3(b)(3)(A) because the evidence supports the finding that the undercover agents posed as persons exercising "custody, care, or supervisory control of the minor." *See* ECF No. 139 at 8 (citing §2G1.3, cmt. n.4). The undercover agents' text messages established that they controlled or possessed the two fictitious victims, and Special Agent Draper's statements to Quraishi during the face-to-face meeting confirmed that fact. *See, e.g.*, PSR ¶ 13 ("I got 14 yo Bri and 12 yo jes"); *see also* Trial Ex. 7 at 1 (Special Agent Draper stating, "So, my girl's up in the room.").

[2] The defendant's sentencing memorandum fails to cite this explicit exception to the general prohibition on applying the adjustment where the defendant merely denies guilty. *See* ECF No. 139 at 7. Nor does the defendant cite any authority for the proposition that application of the adjustment is unconstitutional.

5

confusion, mistake, or faulty memory.'" *United States v. Nagell*, 911 F.3d 23, 29 (1st Cir. 2018) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (citing 18 U.S.C. § 1621(1))).

The First Circuit has repeatedly held that application of the two-level adjustment for perjured trial testimony "is not intended to punish a defendant for the exercise of [his] constitutional right to testify." *See Nagell*, 911 F.3d at 29 (quoting U.S.S.G. § 3C1.1, cmt. n.2 and *Dunnigan*, 507 U.S. at 95). "The enhancement does apply, however, if a defendant exercises his right to testify at trial but commits perjury in the process." *See Nagell*, 911 F.3d at 29–30 (quoting *United States v. Mercer*, 834 F.3d 39, 48 (1st Cir. 2016); *see also United States v. McKeeve*, 131 F.3d 1, 15 (1st Cir. 1997) (affirming application of §3C1.1 where defendant falsely denied knowledge of the illegality of his conduct, holding the defendant's constitutional right to testify, "though precious, does not include a right to commit perjury.").

In applying §3C1.1, the Court "has to make 'findings that 'encompass all the elements of perjury—falsity, materiality, and willfulness.''" *See Nagell*, 911 F.3d at 30 (citations omitted). "A sentencing court, however, is not required to address each element of perjury in a separate and clear finding. A single finding of perjury is sufficient to uphold the lower court's sentencing enhancement for obstruction of justice." *Id.* at 30 (citations omitted). "A finding of falsity '[does] not require directly contradictory testimony but may spring from a solid foundation of circumstantial evidence.'" *Id.* (citation omitted). And materiality means "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." *Id.* (citations omitted).

1. <u>Quraishi's Testimony Was False</u>.

At trial, there was overwhelming evidence that the defendant did not intend to rescue the 14-year-old victim. Therefore, his testimony regarding that alleged plan was false and the jury properly rejected it.

First, Quraishi's testimony would require the Court to conclude that Quraishi—an Ivy League educated anesthesiologist, who was a trained, mandatory reporter of child sexual abuse—believed that confronting a purported child sex trafficker was more prudent and effective than calling the police to report the information. ECF No. 120 at 86–87 (Quraishi acknowledging that he was a mandatory reporter and "[m]andatory reporting training instructs professionals like [him] to call the police").

Second, Quraishi's text messages with the undercover agents and oral statements to Special Agent Draper reveal no plan to rescue the children. Instead, they are replete with explicit statements about his desire to sexually abuse 14-year-old "Bri." *See* Trial Ex. 5 (texts with undercover agent) and 7 (transcript of Quraishi's meeting with Special Agent Draper).

Third, Quraishi's actions were inconsistent with his testimony that he urgently needed to rescue the child victim. ECF No. 120 at 81–84 (Quraishi acknowledging that time would be of the essence when trying to rescue a trafficking victim). Rather than immediately traveling to Waltham to confront the trafficker, he waited more than 40 minutes before leaving his home in Boston. *Compare* Trial Ex. 5 at 2 (undercover agent disclosing that the victims were located near the intersection of Winter and Wyman at 1:24:46 p.m.) *with* Trial Ex. 5 at 3 (Quraishi stating, "OK I'm on my way" at 2:07:34 p.m.).

Fourth, Quraishi's testimony is internally inconsistent. On the one hand, Quraishi claimed that he was alarmed by the undercover agents' texts and believed that there was a child being sold

7

for sex in Waltham. ECF No. 120 at 41–50. On the other hand, when asked why he did not call the police, Quraishi said he did not have any useful information for the police. ECF No. 120 at 49 ("I didn't really have any useful information that I could give them.") This is despite knowing the undercover agents' telephone number and location, and having his communications with the trafficker and the web address for the undercover commercial sex ad.

2. <u>Quraishi's False Testimony Was Material</u>.

Quraishi's false testimony struck at the heart of the first element of the offense: that the defendant intended to entice, obtain, patronize, or solicit a person to engage in a commercial sex act. *See* ECF No. 70 at 2; *see Nagell*, 911 F.3d at 30 (materiality means "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination."). By offering a false version of events in which he sought to rescue the fictitious victim, Quraishi tried to persuade the jury that he did not intend to do anything to cause the victim to engage in a commercial sex act. He lied to attempt to negate an element of the charged offense. Therefore, his false testimony was material.

3. <u>Quraishi Willfully Provided His False Testimony</u>.

Quraishi's false testimony was no mistake. *See Nagell*, 911 F.3d at 30 ("the level of culpability required by the obstruction of justice enhancement is willfulness"). As the Court observed, he testified calmly, describing in detail his alleged conduct and state of mind. This is not a case in which the defendant omitted one minor detail or confused dates. Here, the defendant told an elaborate story about his own state of mind that was contrary to the overwhelming evidence at trial, and the jury's verdict. His testimony was false, material, and willful. Accordingly, the Court should apply the two-level adjustment for obstruction of justice.

**Argument**

I. <u>The Sentencing Factors Under 18 U.S.C. § 3553(a) Support a 151-Month Sentence.</u>

    A. <u>The nature and circumstances of the offense and history and characteristics of the defendant support the government's recommendation.</u>

The Court should sentence Quraishi to serve 151 months in prison because he tried to sexually abuse a 14-year-old girl, and he attempted to do so despite his unique professional training and awareness of the profound harm his abuse would cause. *See* 18 U.S.C. § 3553(a)(1).

First, Quraishi's intent and plan were depraved. He ordered unprotected anal sex with a child and went to a hotel ready to perform that act. Fortunately, Quraishi was apprehended during a law enforcement operation. However, until he was arrested, he did not know the victim was fictitious. He believed he was just minutes away from exposing a child to the devastating physical and emotional harm of having her body sold to a stranger. Had Quraishi been communicating with an actual trafficker, his conduct would have been life-altering for the child victim.

Second, Quraishi's professional background makes his predatory conduct especially egregious. At the time of his arrest, Quraishi was a licensed anesthesiologist working in the Intensive Care Unit at Tufts Medical Center. He was responsible for treating vulnerable patients. Quraishi's position of trust sets him apart from other defendants because as a medical doctor, he was acutely aware of the destructive effects of child sexual abuse.[3] He had even received formal training regarding human trafficking. ECF No. 120 at 47. Yet, with that knowledge and medical

---

[3] The Court should decline Quraishi's invitation to conclude that he and defendant Dimitri McKenzie are similarly situated. ECF No. 139 at 22; s*ee United States v. McKenzie*, 22-cr-10312-WGY. While McKenzie's conviction arises from the same HSI operation, the similarities end there. At the time of his arrest, McKenzie was in his late 20s and working as cargo handler at Logan Airport, having dropped out of college. *United States v. McKenzie*, 22-cr-10312-WGY, ECF No. 94 at 1 (McKenzie's sentencing memorandum). His background is devoid of the training and experiences that made Quraishi uniquely aware of the harm he would cause.

training, he still decided to harm a child for his own sexual gratification. His decision to disregard that harm warrants a significant sentence well above the mandatory minimum term of 120 months.

      B.      The 151-Month Sentence Is Necessary To Deter Others.

Quraishi and the other defendants who have been convicted as part of this HSI operation are evidence that there is a market for the sexual abuse of children. When undercover agents indicated that they were offering to sell sex with 12- and 14-year-old girls, Quraishi and others responded and arrived ready to abuse those children. *See also United States v. Medina*, No. 22-cr-10311-DJC (D. Mass.) (sentenced to 180 in prison); *United States v. McKenzie*, 22-cr-10312-WGY (D. Mass.) (sentenced to 126 months in prison); and *United States v. Cannon*, 22-cr-10305-FDS (D. Mass.) (sentenced to 180 months in prison). The sentence the Court imposes in this case should be appropriately calibrated to deter others who consider paying to abuse children. The 151-month sentence achieves that objective. *See* 18 U.S.C. § 3553(a)(2)(B).

## Conclusion

For the foregoing reasons, the government respectfully request the following sentence: 151 months' imprisonment; 5 years of supervised release, with standard and mandatory conditions; and special assessments of $5,100.

                    Respectfully submitted,

                    LEAH B. FOLEY
                    United States Attorney

      By:    /s/ Brian A. Fogerty
             BRIAN A. FOGERTY
             LAUREN A. GRABER
             Assistant United States Attorneys

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                                    /s/ Brian A. Fogerty
                                    BRIAN A. FOGERTY
                                    Assistant United States Attorney

Date: January 21, 2025