UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 22-cr-10306-AK |
| **SADEQ QURAISHI** | ) ) ) | |

### DEFENDANT'S MOTION FOR STAY OF SENTENCE AND/OR BAIL PENDING APPEAL UNDER FED. R. CRIM. P. 46(c) AND 18 U.S.C. § 3143

Defendant Sadeq Quraishi, through his counsel, respectfully requests the Court to allow Dr. Quraishi to remain under the agreed upon conditions of release pending appeal.

### I. STATEMENT OF RELIEF SOUGHT

Dr. Quraishi moves for an order for bail pending appeal pursuant to Federal Rule of Criminal Procedure 46(c), 18 U.S.C. § 3143(b), and Federal Rule of Appellate Procedure 9(b). This Motion is supported by the filed Declaration of Mark J. Werksman in Support of Appellant's Motion for Bail Pending Appeal ("Werksman Dec.") and the legal arguments and analysis contained herein.

### II. PROCEDURAL BACKGROUND

On November 2, 2022, a criminal complaint was filed against Dr. Quraishi. On November 10, 2022, a federal grand jury indicted Dr. Quraishi on a single-count of Attempted Sex Trafficking of a Child in violation of 18 U.S.C. § 1591(a)(1), (b)(2) and 1594(a). Pre-trial, Dr. Quraishi was released on a $100,000 appearance bond and was complaint with all conditions on release. ECF. Nos. 11, 12. Dr. Quraishi was subsequently under home confinement but allowed to attend weekly therapy with New England Forensic Associates. ECF No. 11. On May

1

19, 2023, Dr. Quraishi filed an Unopposed Motion to Modify Conditions of Release. ECF No. 35. On May 22, 2023, the Court granted the modification, and home confinement was changed to a daily curfew of 9:00 P.M. to 6:00 A.M. ECF No. 36. On October 10, 2024, nearly two years later, a jury found Dr. Quraishi guilty. ECF No. 115. Immediately following the verdict, the court heard argument concerning custody, and Dr. Quraishi was allowed to remain under home confinement with electronic monitoring pending sentencing. ECF No. 127 at 4-78.

### III. MEMORANDUM OF POINTS AND AUTHORITIES

**A.      Applicable Standard**

In general, the Court must detain a defendant who has been found guilty of an offense and sentenced to a term of imprisonment pending his appeal. *See* 18 U.S.C. § 3143(b). However, execution of that term must be stayed and the defendant released on bail pending appeal if he shows, 1) by clear and convincing evidence that he is not likely to flee or pose a danger to the safety or any person or the community, 18 U.S.C. § 3143(b)(1)(A); and 2)

> that the appeal is not for the purposes of delay and raises a substantial question of law or fact likely to result in –(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1)(B). The First Circuit has interpreted that to include two distinct requirements:

> (1) that the appeal raise a substantial question of law or fact [the substantiality prong] and
> (2) that if the substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed [the likelihood prong].

*United States v. Zimny*, 857 F.3d 97, 99 (1st Cir. 2017), *quoting United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985).

While the likelihood prong "has provoked little controversy," the substantiality prong begs additional explanation. *Bayko*, 774 F.2d at 522-23 (explaining that the second [likelihood]

2

prong "should be read to mean that 'it is more probable than not' a favorable decision will result in a reversal of the conviction of a new trial."). The *Bayko* court adopted the "substantial question of law or fact" interpretation of the Eleventh Circuit, which was also adopted by the Second, Fifth, Eighth, and Tenth Circuits, to mean "a 'close' question or one that very well could be decided the other way." *Id*. at 523 *quoting United States v. Giancola*, 754 F.2d 898 (11th Cir. 1985). Additionally, the *Bayko* court agreed "with the other circuits that the language in the statute which reads 'likely to result in reversal or an order for a new trial' is a requirement that the claimed error not be harmless or unprejudicial." *Bayko*, 774 F.2d at 523. Thus, this language is "applied flexibly--a question that be regarded as 'close' often suffice." *United States v. Colon-Munoz*, 292 F.3d 18, 20 (1st Cir. 2011).

**B.    Application of Standard**

    **1. Dr. Quraishi's Pretrial and Post-Trial Conduct Is Relevant, Should be Considered by the Court, and Establishes That He Is Not A Flight Risk**

As discussed above, 18 U.S.C. § 3143(b) allows a defendant-appellant to be released pending appeal if he establishes that (1) he "is not likely to flee or pose a danger to the safety of any other person or the community if released"; (2) his "appeal is not for the purpose of delay"; and (3) "the appeal raises a substantial question of law or fact." The defendant must meet this burden by clear and convincing evidence. Fed. R. Crim. P. 46. When these conditions are satisfied, the Court "shall order" the individual released pending resolution of the appeal. 18 U.S.C. § 3143(b)(1)(B). As set forth herein, Dr. Quraishi meets this standard for release.

    *a. Dr. Quraishi Is Not A Flight Risk*

Throughout this case, Dr. Quraishi has never indicated that he would flee from the court's jurisdiction. *See United States v. Figueroa-Alvarez*, 681 F.Supp 3d 1131, 1137 (D. Idaho July 10, 2023) (quotation omitted) (defining flight risk). As set forth above, the post-trial burden shifts to

Dr. Quraishi to show he "is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(b); Fed. R. Crim. P. 46. Dr. Quraishi demonstrated this throughout his pre-trial release and especially after the jury returned their verdict. ECF No. 127 at 4-78.

The court heard argument from the Government and Dr. Quraishi then decided that Dr. Quraishi could remain on home confinement. *Id.* Indeed, the Court stated:

> However, based on what I know about the case, looking at this release status letter, understanding that he has complied with all of the conditions, I don't believe that he is a flight risk or that he presents a danger to the community, so I will accept that his treatment is an exceptional circumstance or reason to release him pending sentencing.

*Id.* at 4-75-76.

Thus, the Court found that Dr. Quraishi was neither a flight risk nor a danger to the community, discussed *infra*, even after a jury found him guilty and knowing that the mandatory minimum sentence was 10 years. This clearly illustrates the seriousness of Dr. Quraishi as well as the trust that he has shown to the Court.

### b. Dr. Quraishi Does Not Pose A Danger To The Community

As to likelihood of danger, again, there was insufficient evidence pre-trial and post-conviction to warrant detention. The facts of the allegation in this case did not change. In postconviction argument, the Government requested post-conviction remand. *Id.* at 4-73. In doing so, the Government made no argument as to danger to the community, instead focusing on the singular change in circumstances; the conviction. *Id.* at 4-73. Illustrated above, the Court found that Dr. Quraishi was no danger to the community. *Id.* at 4-76. Dr. Quraishi, instead, helped the community after Probation recommended a lenient curfew after over six months of strict home detention compliance. ECF No. 139 at 10. Dr. Quraishi volunteered 10-15 hours per week at Foodlink where he helped pack and transport surplus food from grocery stores to food

4

pantries. *Id*. Additionally, Dr. Quraishi helped the organization target food donations with higher nutritional value to improve the health of those who rely on food pantries. *Id.* Thus, even in his time of uncertainty, Dr. Quraishi did what he knew best—he helped the community.

### 2. Dr. Quraishi's Appeal Presents Substantial Questions of Law and Is Not For The Purpose of Delay

Dr. Quraishi has been clear from the start—he does not want to delay any proceedings and instead wants to exercise all rights afforded to him. *See* U.S. Const. Amend. VI. Dr. Quraishi has already hired appellate counsel who has been admitted to the First District. Werksman Dec. Ex. 1. At trial, Dr. Quraishi brought several challenges to the introduction and exclusion of evidence that will be at issue in the appeal, including but not limited to the exclusion of defense expert Dr. Fred Berlin. Additionally, there will be challenges to jurisdiction, jury selection and jury instructions, including but not limited to questions concerning entrapment and similar acts.

Dr. Quraishi will raise several of these substantial questions of law, each of which are "close" and "that very well could be decided the [either] way." *Bayko*, 774 F.2d at 523.

#### a. The Question of Whether the Limitation on the Testimony of Defense Expert Dr. Fred Berlin was Proper is Close

Dr. Fred Berlin is a board-certified psychologist, an associate professor of psychiatry and behavioral sciences at Johns Hopkins University, and the director of the National Institute for the Study, Prevention and Treatment of Sexual Trauma. ECF No. 91 at 4-5. In short, Dr. Berlin is one of the nation's foremost experts in sexual offenses. *Id.* at 34.

On October 4, 2024, the court limited Dr. Berlin's testimony to educating the jury about persons with mental health conditions and behaviors that are common in individuals who have a sexual interest in children. ECF No. 102. The court allowed Dr. Berlin to testify to the results of Dr. Quraishi's psychological evaluation and examination as well as Dr. Quraishi's interest in adults. *Id*. However, Dr. Berlin could not comment on whether Dr. Quraishi intended to have sex

5

with a minor. *Id*.

Dr. Quraishi will argue that Dr. Berlin's limitation was improper even within the limitations and exception set out by Federal Rule of Evidence 704. The Supreme Court recently clarified that "Rule 704(b) thus proscribes only expert opinions in a criminal case that are about a particular person ("the defendant") and a particular ultimate issue (whether the defendant has a "mental state or condition" that is "an element of the crime charged or of a defense."). *United States v. Diaz*, 605 U.S. 526, 534 (2024). Here, the element of the crime most relevant whether "the defendant intended to entice, obtain, patronize, or solicit a person to engage in a commercial sex act." ECF No. 127 at 4-55. In another case where Dr. Belin's testimony was at issue, the D.C. Circuit court found that exclusion of Dr. Berlin's testimony was reversible error. *United States v. Hite*, 769 F.3d 1154, 1169 (D.C. Cir. 2014). Additionally, the D.C. Circuit found the defendant's "sexual interest in children was relevant to the question of whether [the defendant] had the requisite intent…" *Id*; *see also United States v. Gladish*, 536 F.3d 646, 650 (7th Cir. 2008) (noting that the district court should have permitted the defendant's expert to testify "that it was unlikely, given the defendant's psychology, that he would act on his intent"). Thus, the question of whether Dr. Berlin's testimony was properly limited is a "close" one. *Bayko*, 774 F.2d at 523.

### b. *The Question of Whether Pattern Entrapment Instruction was Proper is Close*

On October 10, 2024, the Court read the final jury instructions. Dr. Quraishi maintains that the jury was improperly instructed regarding entrapment. The Court improperly added the word "improperly" in one important instance, shifting the burden to Dr. Quraishi to prove an additional element.

First, the court stated: "A person is entrapped when he or she is *improperly* induced or

persuaded by law enforcement officers or their agent to commit a crime that he or she was not otherwise ready and willing to commit." ECF No. 127 at 4-57 (italics added).

First Circuit Pattern Criminal Jury Instruction 5.06 states, in relevant part:

> 5.06 Entrapment
>
> [Defendant] maintains that he/she was entrapped. A person is entrapped when he/she is induced or persuaded by law enforcement officers or their agents to commit a crime that he/she was not otherwise ready and willing to commit.

Pattern Crim. Jury Instr. 1st Cir. § 5.06 (1998).

"The defense of entrapment has two elements: (1) government inducement of the accused to engage in criminal conduct, and (2) the accused's lack of predisposition to engage in such conduct." *United States v. Rodriguez*, 858 F.2d 809, 812 (1st Cir. 1988). Inducement requires more than a showing that law enforcement created the opportunity for a person to commit a crime; instead, it is "the opportunity plus something else." *United States v. Gendron*, 18 F.3d 955, 961 (1st Cir. 1994).

As such, the court eviscerated the whole purpose of the instruction by adding incorrectly adding the word "improperly" in this instance. Dr. Quraishi asserts that the incorrect addition of the word in the entrapment instruction is an issue "that very well could be decided the other way." *Bayko*, 774 F.2d at 522-23.

### c. *The Question of Whether the Federal Government had Jurisdiction is Close*

Notably, the third element in one-count indictment, requires the defendant's act to be "in or affecting interstate or foreign commerce." 18 U.S.C. § 1591(a)(1); ECF No. 127 at 4-56.

Here, Dr. Quraishi merely used a cell phone and met with agents at a hotel chain that serves interstate or foreign travelers. Such an overbroad reading allows for nearly every single

7

case to be brought in a federal court merely because a cellphone may have been present or used. Cellphone use is thoroughly ubiquitous and it is nearly impossible to separate their use from modern life. As of June 2018, "[t]here are 396 million cell phone service accounts in the United States—for a Nation of 326 million people." *Carpenter v. United States*, 585 U.S. 296, 300 (2018). The mere use should not open every single person to federal court liability. Additionally, the type of business where a meeting occurred allows any defendant to be haled into federal court just because they met at a McDonalds. If only, a defendant could be lured via a taped down note[1] to a business with no other franchises, then the proper court would not be federal court. Dr. Quraishi plans to thoroughly argue that this use was improper and the answer to the question is "close." *Bayko*, 774 F.2d at 523.

The full transcripts have not been reviewed by appellate counsel and this is not a full recitation of issues that may be brought in the First Circuit. These issues alone, however, satisfy the "close" requirement to stay the execution of Dr. Quraishi's sentence. *Bayko*, 774 F.2d at 523.

## IV. CONCLUSION

For the foregoing reasons, the Court should stay the execution of Dr. Quraishi's sentence and release him on bail pending appeal on the same terms and conditions as governed by his pretrial release. If it is not so inclined to do so, Dr. Quraishi respectfully requests that the Court set a new self-report date which allows him adequate time to seek a stay from the First Circuit. *See United States v. Schwartz*, 86 F.Supp.3d 25, 28 (D. Mass. 2015) (upon denial of motion to stay, scheduling self-report date two weeks in advance for this purpose).

---

[1] The note must be taped down because the wind may carry it to another state and back thereby affecting interstate commerce. Nor can the note be sent via messenger pigeon because birds fly and thereby affect interstate or foreign commerce.

Dated:  January 24, 2025

                                  Respectfully submitted,

                                  /s/ Mark J. Werksman
                                  Mark J. Werksman
                                  Werksman Jackson & Quinn LLP
                                  888 West Sixth Street, Fourth Floor
                                  Los Angeles, California  90017
                                  Telephone (213) 688-0460
                                  Facsimile (213) 624-1942

January 24, 2025

Certificate of Service

      I hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.

                                  /s/ Mark J. Werksman
                                  Mark J. Werksman